# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Entitled Action Pending in U.S.D.C. Northern District of Illinois**
**Case No.: 1:22-cv-03189**

| | |
|---|---|
| **In re: Motion to Compel Compliance with Subpoena Directed to Department of Labor**<br><br>ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROW-MAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEUTSCHE TELEKOM AG et al.,<br><br>*Defendants.* | Misc. Case No. _____ |

**T-MOBILE US, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL THE UNITED STATES DEPARTMENT OF LABOR TO PRODUCE DOCUMENTS PURSUANT TO FED. R. CIV. P. 45**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      The Action Giving Rise to the Subpoena ................................................ 3

        B.      The Subpoena and the Parties Meet and Confer ...................................... 6

III.    LEGAL STANDARD ........................................................................................ 10

IV.     ARGUMENT ..................................................................................................... 11

        A.      DOL Should Produce Documents Sufficient to Show BLS's Methods for
                Constructing the Relevant Indexes. ....................................................... 12

        B.      DOL Should Produce the Underlying Data for the Relevant Indexes .................. 15

        C.      DOL Should Produce Documents Concerning the Accuracy and/or
                Reliability of the Relevant Indexes ........................................................ 17

V.      CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alexander v. FBI,*
  186 F.R.D. 21 (D.D.C. 1998)..................................................................................19

*Bailey Indus., Inc. v. CLJP, Inc.,*
  270 F.R.D. 662 (N.D. Fla. 2010) ...........................................................................19

*Barnes v. District of Columbia,*
  289 F.R.D. 1 (D.D.C. 2012).....................................................................................17

*Cohen v. Trump,*
  2015 WL 3617124 (S.D. Cal. June 9, 2015)..........................................................16

*Dale et al v. Deutsche Telekom AG et al,*
  Case No. 1:22-cv-03189 ...........................................................................................1

*In re Denture Cream Prods. Liab. Litig.,**
  292 F.R.D. 120 (D.D.C. 2013)...............................................10, 11, 13, 14, 15, 16, 18

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates,**
  506 F. Supp. 2d 30 (D.D.C. 2007) ....................................................................10, 11

*Lamaute v. Power,*
  339 F.R.D. 29 (D.D.C. 2021)...................................................................................14

*New York v. Deutsche Telekom AG,*
  439 F. Supp. 3d 179 (S.D.N.Y. 2020)........................................................................4

*Pekoff v. Farber,*
  240 F.R.D. 26 (D.D.C. 2007)...................................................................................19

*United States v. AT & T Inc.,*
  2011 WL 5347178 (D.D.C. Nov. 6, 2011) ..............................................................11

*United States v. Deutsche Telekom AG,*
  No. CV 19-2232 (TJK), 2020 WL 1873555 (D.D.C. Apr. 14, 2020)........................4

*Watts v. S.E.C.,*
  482 F.3d 501 (D.C. Cir. 2007) ................................................................................11

*Yousuf v. Samantar,*
  451 F.3d 248 (D.C. Cir. 2006) ................................................................................11

*Zirkle Fruit Co. v. United States Department of Labor,*
  2020 WL 1917343 (E.D. Wash. Jan. 27, 2020)......................................................15

## Statutes

44 U.S.C.A. § 3561(7) ................................................................................................16

44 U.S.C.A. § 3572(c)(1)............................................................................................12

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

44 U.S.C. § 3561 *et seq*...........................................................................3, 8, 9, 10, 12, 15, 16, 18

### Rules

Fed. R. Civ. P. 37 ...........................................................................................................1

Fed. R. Civ. P. 45 ...........................................................................................................1

Local Rule 26.1(g) ...........................................................................................................1

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and Local Rule 26.1(g) of the Local Rules of the United States District Court for the District of Columbia, T-Mobile US Inc. ("T-Mobile"), defendant in *Dale et al v. Deutsche Telekom AG et al*, Case No. 1:22-cv-03189, pending in the United States District Court for the Northern District of Illinois (the "Action"), by and through its undersigned counsel, hereby move for an order compelling the Department of Labor ("DOL") to comply with T-Mobile's subpoena for the production of documents ("Subpoena").

## I.    INTRODUCTION

In July 2022, Plaintiffs brought a putative class action against T-Mobile, alleging that the merger between T-Mobile and Sprint Corporation ("Sprint") that was consummated in April 2020 (the "Merger") violated Section 1 of the Sherman Act and Section 7 of the Clayton Act. Declaration of Minae Yu, Ex. S at 1.  Plaintiffs are customers of T-Mobile's competitors, AT&T and Verizon, who never purchased any services from T-Mobile or Sprint.  They nevertheless seek to hold T-Mobile liable for billions of dollars in damages and an order unwinding the Merger on the theory that the transaction somehow enabled AT&T and Verizon to raise their prices for mobile wireless services years after the Merger closed.  Central to the Plaintiffs' theory is a single government-produced metric: the Consumer Price Index for wireless telephone services (the "Wireless CPI") published by DOL, Bureau of Labor Statistics ("BLS").  Plaintiffs expressly rely on the Wireless CPI in contending that the Merger caused "quality adjusted" prices of mobile services to sharply increase in July 2020, just a few months after the transaction closed.  Ex. S at ¶ 80 (citing Wireless CPI).

T-Mobile has vigorously disputed this narrative.  As explained in T-Mobile's motion to dismiss the Action, the Wireless CPI does not demonstrate that the Merger caused mobile wireless

plan prices to increase, nor does it account for numerous independent factors that may drive mobile plan pricing changes, including inflation, increased demand, and marked improvements in service quality enabled by the new 5G technology. Yu Decl. Ex. T at 27-28. Nonetheless, the court in the underlying Action found the Wireless CPI relevant to its consideration of whether the complaint stated a claim, noting the Wireless CPI ostensibly showed a spike in prices in July 2020 after the merger closed in April 2020.

Discovery relating to Wireless CPI is also critical because T-Mobile disputes Plaintiffs' characterization and interpretation of the Wireless CPI. Despite alleging that the Wireless CPI demonstrates that the mobile wireless prices increased shortly after the Meger, Plaintiffs fail to identify any actual price increases implemented by any mobile wireless carrier around this time. Further, while BLS does not disclose all of the plan attributes that are accounted for in its quality adjustments, its website explicitly states that it does not quality-adjust for differences in service quality between plans that use 4G and 5G technologies. Moreover, other indexes that BLS constructed to measure the change in prices of mobile services, including the Producer Price Index for wireless telecommunications carrier ("Wireless PPI"), do not show any increases in prices shortly after the Merger. Taken together, this suggests that the July 2020 jump in prices in the Wireless CPI index may have been caused by the differences in sampled data and/or methodologies used to construct it, rather than actual price changes. These inconsistencies suggest that the July 2020 movement in the Wireless CPI may reflect methodological or sampling artifacts rather than real-world price effects.

For these reasons, despite its deficiencies, the Wireless CPI is undeniably relevant to the Action. Because Plaintiffs have placed the Wireless CPI at the center of their claims, T-Mobile subpoenaed DOL, seeking documents and data necessary to evaluate the construction, accuracy,

and reliability of Relevant Indexes. DOL responded by directing T-Mobile to BLS's publicly available Handbook of Methodology ("HOM") and other information available on its website, which only provides high-level descriptions about general approaches to constructing various price indexes. These materials plainly do not provide the data or detail needed to test Plaintiffs' theory or replicate the contested index movements. In subsequent meet and confers, DOL agreed to produce some limited information about the Wireless CPI such as its sample size, but it refuses to produce the vast majority of responsive information, claiming that doing so would violate the Confidential Information Protection and Statistical Efficiency Act ("CIPSEA"), 44 U.S.C. § 3561 et seq. But T-Mobile does not seek any identifiable information concerning survey respondents, and CIPSEA does not bar disclosure of non-identifiable methodological data. Moreover, T-Mobile has offered to accept redactions or other reasonable safeguards to address DOL's confidentiality concerns, but DOL has ignored these overtures. Yu Decl., ¶ 8, Ex. G at 10; Yu Decl., ¶ 12, Ex. Q at 9.

The requested discovery is highly relevant to the core issues in the Action, and uniquely within DOL's possession. And DOL has not articulated any undue burden it would face in complying with the Subpoena. T-Mobile therefore respectfully requests that the court compel DOL to produce documents and data responsive to the Subpoena.

## II.    BACKGROUND

### A.    The Action Giving Rise to the Subpoena

On April 29, 2018, T-Mobile and Sprint announced their plans to merge. Yu Decl. Ex. S at ¶ 46. For nearly two years following the announcement, the transaction was extensively reviewed by the Department of Justice ("DOJ") and the Federal Communications Commission ("FCC"), as well as various state regulators. The DOJ and FCC ultimately approved the merger, finding that the transaction "will result in significant public interest benefits, including

3

encouraging the rapid deployment of a new 5G mobile wireless network, and improving the quality of the Applicants' services for American consumers," which are "particularly important for the nation's underserved rural areas." Yu Decl. Ex. V; Ex. W at ¶ 5-6. To address any potential anticompetitive concerns, the government imposed certain conditions on the transaction, including T-Mobile's commitment "to offer T-Mobile and Sprint legacy rate plans available as of February 4, 2019 for three years following consummation of the transaction or until better plans that offer a lower price or more data are made available." Yu Decl. Ex. W at ¶ 209. The DOJ and the merging entities filed a consent judgment incorporating this and other conditions with the District of Columbia for approval under the Tunney Act, which was granted upon the court's finding that the transaction "is in the public interest." *United States v. Deutsche Telekom AG*, No. CV 19-2232 (TJK), 2020 WL 1873555, at *7 (D.D.C. Apr. 14, 2020).

The Merger was also challenged in a private lawsuit joined by fourteen state attorneys general seeking to enjoin the transaction pursuant to Section 7 of the Clayton Act. Following a two-week bench trial in the Southern District of New York, the court denied the plaintiffs' request for injunction, holding that the Merger was unlikely to substantially reduce competition in the retail mobile wireless telecommunications services ("RMWTS") market and instead would allow the merged entity to continue T-Mobile's successful pro-consumer business strategy. *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 248 (S.D.N.Y. 2020). The state attorneys general settled the case without appeal, securing additional commitments from T-Mobile instead. Yu Decl. Ex. X at ¶ 1. Among other things, T-Mobile agreed to (1) extend the consumer pricing commitments made to the FCC from three years to five and (2) for five years following the consummation of the merger, offer mobile plans providing unlimited talk, text, and at least 2GB of high-speed data for $15 per month, and unlimited talk, text, and at least 5GB of high-speed data

for $25 per month. *Id.* T-Mobile launched these new plans, which were half the price of T-Mobile's then-lowest price plans, in March 2020. Yu Decl. Ex. 21.

On April 1, 2020, the Merger was consummated. Yu Decl. Ex. S at ¶ 5. Since then, T-Mobile has abided by all of its commitments to regulators and state attorneys general, including its pricing commitments. With the combined resources from T-Mobile and Sprint, T-Mobile has built the nation's fastest, most-awarded 5G network that delivers more data at higher speeds than ever before. Yu Decl. Ex. Z. According to an annual survey conducted by the Cellular Telecommunications Industry Association ("CTIA") between 2020 and 2023, the demand for mobile data skyrocketed while the price per megabyte of data dropped by 50%, giving U.S. consumers significantly "more for less." Yu Decl. Ex. AA at 3, 8.

Despite these achievements, in July 2022, Plaintiffs initiated the Action, claiming that the Merger caused them to pay higher prices for mobile services. Yu Decl. Ex. S at ¶¶ 124, 133. In support of their claims, Plaintiffs rely on BLS's Wireless CPI, which they contend "reflects price increases and decreases in the national market over time, taking into account differences in plan offerings that might add or reduce value to a consumer." *Id.* ¶ 79. Plaintiffs emphasize the reliability of the Wireless CPI, alleging that BLS "quality adjusts" for all relevant, value-determining plan features, "including the amount of high-speed data, the number of lines offered, and other [unidentified] characteristics." *Id.* Plaintiffs allege that the Wireless CPI "demonstrates the harmful effect of the merger on competition" because "[s]hortly after the merger closed...quality-adjusted prices substantially increased for the first time in years." *Id.* ¶ 80.

On December 5, 2022, T-Mobile moved to dismiss the Action on several grounds, including Plaintiffs' failure to plausibly allege that the Merger was anticompetitive. Yu Decl. Ex. T at 25-34. As T-Mobile argued, Plaintiffs' reliance on the Wireless CPI was inapt because their

interpretation of the Wireless CPI is contradicted by other allegations in the Complaint, as well as the (limited) information provided on BLS's website. *Id.* at 28. For example, despite alleging that prices sharply increased in July 2020 based on the index, Plaintiffs were unable to identify any *actual* price increases implemented by Verizon, AT&T, T-Mobile, or any other carrier around that time. *Id.* Moreover, while BLS's website does not disclose how or which plan characteristics are accounted for in its "quality adjustments," it states that "the [Wireless CPI] records changes in wireless telephone plans from 4G networks to 5G networks but *does not quality adjust for these changes.*" *Id.* (emphasis added). This means that one of the most critical changes to RMWTS quality in recent years is disregarded in BLS's "quality adjustments," contradicting Plaintiffs' claims that the Wireless CPI quality adjusts for all relevant plan attributes.

The court in the Action denied T-Mobile's motion to dismiss, concluding that Plaintiffs adequately alleged direct evidence of anticompetitive effects of the Merger. Yu Decl. Ex. U at 35. The court reasoned, "relying on the BLS data, Plaintiffs point to the steady decline in quality-adjusted pricing leading up to the merger and the sharp jump just a few months after its close." *Id.* The court acknowledged the potential limitations of the Wireless CPI, as well as possible alternative explanations for price changes alleged by Plaintiffs. *Id.* at 36-37. But at the pleading stage, the court found that the Wireless CPI, together with other allegations, supported "the reasonable inference that market-wide price increases flowed from the merger," noting the "close temporal connection between the merger closing and the jump in price." *Id.*

**B.     The Subpoena and the Parties Meet and Confer**

Following the court's motion to dismiss order, T-Mobile sought evidence to refute Plaintiffs' allegations concerning the Wireless CPI. In addition to the issues raised in T-Mobile's motion, the Wireless PPI published by BLS, which tracks the average prices charged by mobile wireless service providers, does not show any increases in prices shortly after the Merger. Yu

Decl. Ex. ¶ 25. Further, according to a paper reporting on research conducted by BLS to improve its price change measurements, alternative indexes constructed using improved hedonic regression methods and more robust data likewise do not show any increases in mobile wireless plan prices in July 2020. Yu Decl. Ex. BB at 11-12. To the contrary, these alternative indexes show that prices of mobile wireless services *declined* after the Merger. *Id.* The article attributes this disparity to "differences in sample composition and weighting," noting that in July 2020, "about a third of the official CPI sample of price observations experienced item replacement and an accompanying price increase after prices were adjusted for quality changes." *Id.* at 11. These sources suggest that the July 2020 jump in prices observed in the Wireless CPI that Plaintiffs contend demonstrate the anticompetitive effects of the Merger may have been caused by limitations on data, errors in BLS's methodology, or both.

On September 16, 2024, T-Mobile submitted a FOIA request to DOL, requesting documents concerning BLS's data and methodologies employed in the construction of the Relevant Indexes. Yu Decl. Ex. A. DOL largely responded by directing T-Mobile to BLS's website, which only provides high-level information about general approaches BLS may take to construct the various consumer and producer price indexes that it publishes. Yu Decl. Ex. B.

Because the information provided in DOL's FOIA response was inadequate for the purpose of the Action, on January 24, 2025, T-Mobile served the Subpoena on DOL. Yu Decl., ¶ 4, Ex. C. The Subpoena commanded the production of documents and data sufficient to show (1) the methodologies used to construct the Relevant Indexes, including sampling procedures used, sample sizes, how BLS dealt with changes in availability of items included in the Relevant Indexes, whether and how BLS accounted for changes in specific plan features, quality adjustment methods BLS employed, and how BLS computed the average prices reported in the Relevant Indexes

(Request Nos. 1-6); (2) the underlying data collected and/or used to construct the Relevant Indexes and related data dictionaries (Request Nos. 7-9); and (3) documents and data reflecting BLS investigations or analyses of the reliability and accuracy of the Relevant Indexes, including any investigation and analyses of the change in prices in July 2020 observed in the Wireless CPI (Request Nos. 10-11). *Id.*

On February 11, 2025, T-Mobile met and conferred with DOL concerning the Subpoena. Yu Decl., ¶ 5, Ex. E. In response to DOL's claim that the production of responsive documents would violate CIPSEA, T-Mobile explained that the majority of the requests seek information about DOL's internal procedures and methodologies—not information collected from third parties. *Id.* As for the underlying data, T-Mobile clarified that it is not seeking any identifying information about survey respondents and that DOL can exclude data fields that contain such information. *Id.* The parties agreed to resume the discussion after DOL had a chance to consider what responsive information could be produced consistent with CIPSEA. *Id.* DOL also offered to prepare "explanatory response" to each of the items requested in the Subpoena, which it sent on March 3, 2025. Yu Decl., ¶ 6, Ex. F. But these explanations largely redirected T-Mobile to BLS's website, similar to its FOIA response. *Id.*

On April 1, 2025, T-Mobile and DOL met and conferred again. T-Mobile explained that BLS's website does not provide sufficient details about its methodology as requested by the Subpoena, some of the information DOL claimed in its response was on BLS's website was not available at all, and T-Mobile's request does not call for the disclosure of any respondent identifying information, rendering CIPSEA inapplicable. At DOL counsel's request, on April 17, 2025, T-Mobile sent DOL a letter explaining in detail why the information on BLS's website is insufficient for the needs of the Action and identifying examples of specific information that is

missing from the website. Yu Decl., ¶¶ 7-8, Ex. G. T-Mobile also explained in writing why the Subpoena does not implicate CIPSEA and proposed means to address any potential confidentiality concerns. *Id.*

On June 17, 2025, following two months without any substantive response from DOL, T-Mobile wrote another letter indicating that it intended to file a motion to compel. Yu Decl., ¶¶ 9-10, Ex. H. On June 26, 2025, DOL finally provided a limited set of high-level materials: a "Crosswalk" document containing DOL's narrative responses to the deficiencies raised in the April 2025 letter, six reference materials illustrating information that DOL may be amenable to producing, and three documents/correspondence BLS previously produced in response to T-Mobile's FOIA requests. Yu Decl., ¶ 11, Exs. I-P. The Crosswalk document and two of the reference materials largely regurgitated the information on BLS's website. Yu Decl., ¶ 12, Ex. Q. Four of the reference materials contained some responsive information about the Wireless CPI—such as sample size, number of items replaced, percentage of items reporting quality adjusted or imputed prices in lieu of actual prices, and parameter estimates for BLS's hedonic regression model—but these documents did not cover the entire relevant period nor did they provide all of the relevant information sought by the Subpoena. *Id.* DOL did not provide any additional information about the Wireless PPI at all and refused to produce the underlying data used in the Relevant Indexes. *Id.*

On August 27, 2025, T-Mobile sent another letter to DOL outlining why the materials provided were deficient, offering compromises to resolve T-Mobile's document requests where possible, and again proposing means to address DOL's CIPSEA concerns. Yu Decl., ¶ 12, Ex. Q. T-Mobile requested that DOL confirm by September 12, 2025, whether it would produce the materials T-Mobile requested. *Id.*

On September 17, 2025, DOL responded that it was still reviewing T-Mobile's August 27, 2025 letter. Yu Decl. ¶ 13, Ex. R. DOL also inquired whether an affidavit responding to specific questions posed by the parties would suffice in lieu of producing responsive documents and data. *Id.* On November 20, 2025, T-Mobile and DOL met and conferred again. DOL again suggested that T-Mobile provide specific questions that BLS *may* respond to. Yu Decl., ¶ 14. Because written answers alone would not provide T-Mobile the means to verify the reliability of the data and methodologies employed by BLS and DOL's previous attempts to provide narrative explanations proved to be inadequate, T-Mobile requested that DOL produce the actual documents and data requested in its August 27, 2025 letter. *Id.* DOL reiterated its position that disclosure of this information was barred by CIPSEA (an assertion that T-Mobile continues to refute). DOL's continued refusal to produce the relevant documents necessitates this motion.

## III.    LEGAL STANDARD

"The Federal Rules of Civil Procedure permit broad access to relevant information at the discovery stage." *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 41 (D.D.C. 2007). "For purposes of discovery, relevance is liberally construed." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013). "With respect to a Rule 45 subpoena, a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Id.* (cleaned up). The liberal discovery standard applies with equal force to government agencies. *Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006); *Watts v. S.E.C.*, 482 F.3d 501, 508 (D.C. Cir. 2007). "Moreover, the general policy favoring broad discovery is particularly applicable where, as here, the court making the relevance determination has jurisdiction only over the discovery dispute, and hence has less familiarity with the intricacies of the governing substantive law than does the court

overseeing the underlying litigation." *Gates*, 506 F. Supp. 2d at 42. "In such situations, doubts regarding the relevance of requested information should be resolved in favor of permissive discovery." *Id.* (cleaned up).

Once the moving party carries their "initial burden of explaining how the requested information is relevant," "the burden shifts to the objecting party to explain why discovery should not be permitted." *Gates*, 506 F. Supp. 2d at 42. "The party opposing a motion to compel carries a heavy burden of persuasion." *United States v. AT & T Inc.*, 2011 WL 5347178, at *5 (D.D.C. Nov. 6, 2011).

## IV.    ARGUMENT

T-Mobile requests that the court order DOL to produce (1) documents sufficient to show BLS's methodology for constructing the Relevant Indexes;[1] (2) documents concerning any analyses or investigation BLS conducted concerning the reliability of the Relevant Indexes or unusual changes observed, particularly with respect to the cause of the July 2020 jump in the Wireless CPI;

---

[1] Specifically, T-Mobile requests that DOL produce (1) documents sufficient to show the sampling method used in selecting the items included in the Relevant Indexes, including any type of RMWTS carriers excluded from the sample; (2) documents sufficient to show the sample size, response rate, and data collection outcome for the Relevant Indexes; (3) documents sufficient to show the breakdown of sample composition for the Relevant Indexes by (i) postpaid vs prepaid, (ii) family vs. individual, and (iii) data vs. no data; (4) documents sufficient to show the confidence intervals for the Relevant Indexes; (5) documents sufficient to show how the BLS deals with item discontinuance and replacements for the Relevant Indexes; (6) documents sufficient to show the BLS' methods for determining whether to report collected prices, quality adjusted prices or imputed prices for replaced items in the Relevant Indexes, including specific plan attributes or other criteria used to make such assessment; (7) documents sufficient to show the computation of quality adjusted, imputed prices and average prices for the Relevant Indexes, including specific plan attributes used in such computation; (8) documents sufficient to show how all taxes and fees charged to consumers are treated in the construction of the Relevant Indexes; and (9) documents sufficient to show any specific process the BLS follows to identify and exclude outliers in the Relevant Indexes and whether any data was "held out" from the Relevant Indexes due to reliability concerns. *See* Yu Decl. Ex. Q.

and (3) data collected and/or used by BLS to construct the Relevant Indexes and related data dictionaries, excluding any respondent identifying information ("RII"). As detailed below, each of the above categories of documents bear directly on Plaintiffs' claims and T-Mobile's defenses and this information is not available from any other sources. DOL has not articulated any undue burden it would face in complying with T-Mobile's requests. While DOL contends that CIPSEA prohibits the production of the documents and data sought by the Subpoena, that statute only prohibits the disclosure of information acquired from third parties in an identifiable form. 44 U.S.C.A. § 3572(c)(1). Because T-Mobile is not seeking any identifiable information acquired from third parties, CIPSEA cannot justify DOL's refusal to produce plainly discoverable information.

**A.    DOL Should Produce Documents Sufficient to Show BLS's Methods for Constructing the Relevant Indexes.**

DOL should produce documents sufficient to show how BLS constructed the Relevant Indexes for the period covering January 1, 2017, to June 30, 2024 (Subpoena requests 1-6).[2] DOL has not contested the relevance of these documents. And for good reasons. Plaintiffs have made the Wireless CPI a central focus of their claims in the Action, alleging that the index "demonstrates the harmful effect of the merger on competition." Yu Decl. Ex. S at ¶¶ 79-80. A graph of the Wireless CPI features prominently in Plaintiffs' Complaint, with Plaintiffs alleging that it shows that "quality-adjusted prices substantially *increased* for the first time in years" shortly after the merger closed. *Id.* (emphasis in original). The court denied T-Mobile's motion to dismiss, in part, due to the Wireless CPI, reasoning that the change in prices observed in July 2020 raised a plausible inference of the Merger's anticompetitive effects. Yu Decl. Ex. U at 35. Given Plaintiffs'

---

[2] The Subpoena sought responsive information for the period covering January 1, 2015, to June 30, 2024. As a compromise, T-Mobile has limited the relevant period to January 1, 2017, to June 30, 2024.

allegations and the court's ruling, there can be no dispute that the Wireless CPI is highly relevant to the Action. *See Denture Cream*, 292 F.R.D. at 124 (holding that documents concerning methodology and underlying data used in a study relied on by the plaintiff was discoverable because there was "more than a mere possibility that the information sought may be relevant to the claim or defense of any party") (cleaned up).

The specific methods BLS employed in constructing the Relevant Indexes, in turn, are relevant for assessing the reliability, limitations, and interpretation of the Wireless CPI. Among the indexes BLS constructed to measure the change in prices of mobile services, the Wireless CPI is the only one that exhibits a jump in prices in July 2020. BLS itself explained that the disparity was likely caused by the sample composition of the Wireless CPI, the unusual number of replacements that occurred in July 2020, and the quality adjustments that resulted in price increases. The limited reference materials DOL provided further indicate that July 2020 was an outlier, as a third of the items included in the index were replaced, with 99% of those items lacking any comparable substitutes. Yu Decl. Ex. K. This means that the prices reported in the Wireless CPI for July 2020 do not reflect the actual, observed prices of sampled plans, but prices BLS computed using its "quality adjustment" and "imputed price" methodologies. And it suggests that these adjustments caused the standard error for the Wireless CPI to spike, calling into question the reliability of the prices reported in the Wireless CPI. Yu Decl., Ex. L. These are critical facts for T-Mobile's defenses in the Action, and T-Mobile needs evidence to establish them. Documents and data concerning BLS's methodology will likely show whether and how errors in sampling, replacement selection, quality adjustments, imputed price computation and average price computation may have created an appearance that prices increased in July 2020 when they actually did not, thus

undermining one of Plaintiffs' key pieces of evidence regarding the Merger's alleged anticompetitive effects.

These highly relevant materials are not available from any other sources. The bulk of the information produced thus far—BLS's HOM and other information on its website—do not provide the necessary details to identify errors in BLS's processes and methods as they were applied to the Wireless CPI during the relevant period. Accordingly, DOL should be compelled to produce the remainder of the requested documents and data to ensure that T-Mobile has access to the full scope of necessary information. *See Lamaute v. Power*, 339 F.R.D. 29, 40-41 (D.D.C. 2021) (ordering a federal agency to produce all information about a given topic because its earlier production "limited the data set in a way that preclude[d] meaningful interpretation of [the] data"); *Denture Cream*, 292 F.R.D. at 125 (ordering nonparty to produce additional documents and data because "if the documents that have been produced permit a reasonable deduction that other documents may exist . . . then the moving party has provided evidence sufficient to support a motion to compel") (cleaned up).

DOL has not articulated any undue burden it would face by having to produce the documents T-Mobile requested. Nor could it, since the information sought—including sample sizes, response rates, confidence intervals, distributions of outcomes, hedonic specifications and parameters, comparability and compatibility criteria, substitution decisions, and internal analyses—are maintained by BLS in the ordinary course of business and should be readily identifiable, easy to collect and produce. At any rate, even if DOL faces some burden in collecting and producing these materials, that burden does not outweigh the needs of the Action given Plaintiffs' express reliance on the Wireless CPI and the amount of damages and highly disruptive injunctive relief Plaintiffs are seeking. Accordingly, "the needs of the case, the importance of the issues at stake in the

litigation, and the importance of the proposed discovery in resolving the issues, all counsel in favor of requiring the [DOL] to produce the requested discovery." *Denture Cream*, 292 F.R.D. at 127 (cleaned up).

CIPSEA does not prohibit the production of these documents either. T-Mobile seeks BLS's documents reflecting its own methodologies employed in the construction of the Relevant Indexes. These documents do not constitute identifiable information collected from third parties subject to CIPSEA protections. Accordingly, DOL should produce the documents sufficient to show BLS's methods for constructing the Relevant Indexes. *See Zirkle Fruit Co. v. United States Department of Labor*, 2020 WL 1917343, at *5 (E.D. Wash. Jan. 27, 2020) (ordering DOL to produce documents that are not covered by CIPSEA).

**B.    DOL Should Produce the Underlying Data for the Relevant Indexes**

DOL should also be required to produce the underlying data collected and/or used to construct the Relevant Indexes and related data dictionaries (Subpoena requests 7-9). The unusually high standard error associated with the July 2020 increase in prices may have resulted from the quality of the underlying data, the methodologies BLS applied to the data or both. Indeed, BLS used different data and methods to construct the Wireless CPI, Wireless PPI, and the alternative indexes. To identify the cause of the disparity among the indexes and meaningfully test the reliability of the Wireless CPI, T-Mobile needs the underlying data, in addition to the methods employed, to replicate what BLS did to construct the indexes. Because Plaintiffs' case relies extensively on these indexes, the underlying data is uniquely important, cannot be obtained from other sources, and its production—subject to reasonable safeguards—is both feasible and essential. As with other requested information, DOL has not contested the relevance of the underlying data (nor would it be able to). *See Denture Cream*, 292 F.R.D. at 124 (holding that underlying data employed in a study relied on by the plaintiff is relevant); *Cohen v. Trump*, 2015

WL 3617124, at *19 (S.D. Cal. June 9, 2015) ("[U]nderlying data and non-privileged correspondence is relevant within the meaning of Rule 45.").

DOL's primary objection to the production of the data and associated data dictionaries is that doing so would violate CIPSEA. While CIPSEA prohibits the disclosure of respondent identifying information ("RII"), it does not bar the production of other non-identifying information, aggregated or anonymized data, or disclosures authorized by law or with consent. 44 U.S.C.A. § 3561(7). Importantly, T-Mobile does not seek the production of any third-party data in an identifiable form. In fact, T-Mobile has repeatedly made clear that it is amenable to DOL taking measures to anonymize the underlying data sought by the Subpoena, including using codes in lieu of RII or excluding specific data fields that reveal identifying information. Yu Decl., ¶ 8, Ex. G at 10; Yu Decl., ¶ 12, Ex. Q at 9; Yu Decl., ¶ 14. T-Mobile also proposed that DOL produce a list of fields and their descriptions (not the values for those fields) so that T-Mobile can work with DOL to identify specific fields that should be excluded.

DOL ignored T-Mobile's invitation to explore means to produce the data consistent with CIPSEA. Yu Decl. ¶ 12. Instead, DOL insisted that even with these protections in place, producing responsive data would allow a reasonable person to deduce the survey respondents' identity based on descriptions of the plans. *Id.* But the wireless marketplace includes hundreds of providers and thousands of plans distributed across multiple outlets. Indeed, the reference material DOL has provided confirms that the Wireless CPI tracks nearly 1,500 plans each month. Yu Decl. Ex. [Sample Size]. Absent specific carrier or plan names, a reasonable person cannot infer specific respondents from the descriptions of over a thousand plans collected monthly.

To the extent there are any lingering concerns, T-Mobile proposed that DOL seek consent from respondents to disclose the information. As BLS has acknowledged, much of the information

reflected in the Wireless CPI is collected from survey respondents' public websites, mitigating any competitive risk associated with disclosure to T-Mobile. Yu Decl., ¶ 8, Ex. G at 10. Moreover, the Confidentiality Order in this case has been litigated and amended to ensure extensive protections that prevent any competitive information from being shared with any T-Mobile staff outside of the legal department.

DOL has refused such compromises without providing any explanation as to how anonymized data could possibly lead to the identification of individual participants in the Relevant Indexes. While DOL has offered to produce a declaration in lieu of producing the data, the proposed solution is unworkable given that the declaration would need to cover descriptions of over a thousand data points collected each month for a period covering seven years. Further, DOL's past attempts to provide information through narrative responses has been insufficient, Yu Decl. ¶ 7, and a declaration does not allow T-Mobile to independently verify the reliability of the Wireless CPI. T-Mobile has "the right to check [DOL]'s work and determine whether the [indexes] accurately reflect" the underlying data. *Barnes v. District of Columbia*, 289 F.R.D. 1, 22 (D.D.C. 2012) (granting motion to compel because "[i]n order for the plaintiffs to understand fully the [final government reports at issue], they need to have all the underlying data and information on how the [entity] prepared the Reports").

Producing the data stripped of RII is the only reasonable means to provide the information sought by the Subpoena while complying with CIPSEA. DOL should be ordered to do so.

**C. DOL Should Produce Documents Concerning the Accuracy and/or Reliability of the Relevant Indexes**

Finally, DOL should be required to produce any documents reflecting investigations or analyses regarding the accuracy and reliability of the Wireless CPI and PPIs, including specifically with respect to the July 2020 jump (Subpoena requests 10-11). The documents are clearly relevant

to the Action given Plaintiffs heavy reliance on the Wireless CPI and that price jump. *See Denture Cream*, 292 F.R.D. at 124 (finding discovery relevant where plaintiffs had affirmatively represented that they intended to rely on the materials at issue). DOL does not contend otherwise. Such documents likely exist, as the Alternative Index Report references ongoing attempts by BLS to improve the reliability of the CPI. DOL has not identified any undue burden it would face in searching for and collecting responsive documents and T-Mobile cannot obtain the information from any other sources. Moreover, because T-Mobile seeks documents concerning BLS's own internal assessments of its indexes, CIPSEA is not implicated by these requests. Rather than search for and produce responsive documents, however, DOL has directed T-Mobile to the Alternative Index Report and BLS's website that contain links to publications of standard errors for different CPI categories.

DOL's responses are insufficient for several reasons. First, DOL has failed to produce any information regarding the Wireless PPI. Second, while standard error provides one metric to assess the reliability of the Wireless CPI, T-Mobile's requests are not limited to that single metric. Instead, the requests call for documents concerning any investigation or analyses conducted by BLS concerning the reliability of the Relevant Indexes and any unusual changes observed. To the extent DOL contends that it has no responsive documents other than the Alternative Index Report, DOL should submit a signed declaration under oath detailing the diligence it has undertaken to identify other responsive documents. *See Alexander v. FBI*, 186 F.R.D. 21, 38 (D.D.C. 1998) ("[A]n individual served with a subpoena duces tecum has an obligation to conduct a reasonable search to ensure that non-privileged documents that are relevant or likely to lead to the discovery of admissible evidence are produced."); *Pekoff v. Farber*, 240 F.R.D. 26, 28-29 (D.D.C. 2007) (ordering party to produce an affidavit "describing in detail the nature of the search conducted"

where party's response to discovery request was that there was "nothing more to produce"); *see also Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 671–72 (N.D. Fla. 2010) (finding that when it reasonably appears that a response is incomplete, the court may require certification that the nonparty has "conducted a search for the information reasonably available to them . . . and has determined that the information requested either does not exist or that it has been produced").

## V.    CONCLUSION

For the foregoing reasons, the court should grant T-Mobile's motion and order DOL to produce documents and data responsive to the Subpoena.

DATED: December 4, 2025                Respectfully submitted,

_____

Rachel S. Brass (*pro hac vice pending*)
Caeli A. Higney (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Phone: 415-393-8200
RBrass@gibsondunn.com
CHigney@gibsondunn.com

Minae Yu (*pro hac vice pending*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Phone:  213-229-7000
MYu@gibsondunn.com

Matthew Butler
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
Phone: 202-887-3739
MButler@gibsondunn.com
*Counsel for Defendant T-Mobile US, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, counsel for Defendant served the foregoing documents on counsel for the Department of Labor via personal service. Counsel also filed a copy of the foregoing documents with the Court, which will send notifications of the filing to all counsel of record.

Rachel S. Brass

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Entitled Action Pending in U.S.D.C. Northern District of Illinois
### Case No.: 1:22-cv-03189

|  |  |
|---|---|
| **In re: Motion to Compel Compliance with Subpoena Directed to Department of Labor**<br><br>ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs,*<br><br> v.<br><br>DEUTSCHE TELEKOM AG et al.,<br><br>    *Defendants.* | Misc. Case No. _____ |

## [PROPOSED] ORDER ON DEFENDANT T-MOBILE US INC.'S MOTION TO COMPEL THE DEPARTMENT OF LABOR TO PRODUCE DISCOVERY RESPONSIVE TO T-MOBILE'S SUBPOENA

Upon consideration of Defendant T-Mobile US, Inc.'s Motion to Compel, it is hereby ORDERED that the Department of Labor shall produce documents responsive to T-Mobile's Subpoena.


IT IS SO ORDERED.

Dated: _____, 2025

             _____
             Hon.
             United States District Judge

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Entitled Action Pending in U.S.D.C. Northern District of Illinois
Case No.: 1:22-cv-03189**

| | |
|---|---|
| **In re: Motion to Compel Compliance with Subpoena Directed to Department of Labor**<br><br>ANTHONY DALE, BRETT JACKSON, JOHNNA FOX, BENJAMIN BORROWMAN, ANN LAMBERT, ROBERT ANDERSON, and CHAD HOHENBERY on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs,*<br><br> v.<br><br>DEUTSCHE TELEKOM AG et al.,<br><br>    *Defendants.* | Misc. Case No. _____ |

## DECLARATION OF MINAE YU IN SUPPORT OF DEFENDANT T-MOBILE US, INC.'S MOTION TO COMPEL THE DEPARTMENT OF LABOR TO PRODUCE DISCOVERY RESPONSIVE TO T-MOBILE'S SUBPOENA

I, Minae Yu, declare as follows:

1.  I am an attorney duly licensed to practice law in the State of California, and I have been admitted *pro hac vice* in *Dale et al v. Deutsche Telekom AG et al,* Case No. 1:22-cv-03189 (the "Underlying Action"). I am an associate attorney at the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Defendant T-Mobile US, Inc. ("T-Mobile") in the Underlying Action and in *Dale et al v. Deutsche Telekom AG et al,* this Misc. Case. I submit this declaration in support of T-Mobile's Motion to Compel The Department of Labor ("DOL") to Produce Discovery Responsive to T-Mobile's Subpoena. I have personal knowledge of the matters set forth herein,

- 1 -

except where stated otherwise, and if called to testify, I could and would testify competently thereto.

2.      On September 16, 2024, T-Mobile issued a FOIA Request to the DOL, which was forwarded to the Bureau of Labor Statistics ("BLS"), seeking information on the methodologies used to construct the CPI and PPI Indexes (the "Relevant Indexes"); data used to construct the Relevant Indexes; and data dictionaries for the Relevant Indexes. Attached hereto as **Exhibit A** is a true and correct copy of T-Mobile's FOIA Request to DOL, dated September 16, 2024.

3.      On October 17, 2024, BLS responded to T-Mobile's FOIA Request. BLS largely pointed to information posted on the BLS website in response to T-Mobile's Request. BLS also produced four supplemental documents. Attached hereto as **Exhibit B** is a true and correct copy of BLS's Response to T-Mobile's FOIA Request, dated October 17, 2024.

4.      On January 24, 2025, T-Mobile issued an amended subpoena to DOL (the "Subpoena") because the information provided in BLS's FOIA Response was largely insufficient. The Subpoena commanded the production of documents and data sufficient to show (1) the methodologies used to construct Relevant Indexes, including sampling procedures used, sample sizes, how BLS dealt with changes in availability of items included in the Relevant Indexes, whether and how BLS accounted for changes in specific plan features, quality adjustment methods BLS employed, and how BLS computed the average prices reported in the Relevant Indexes (Request Nos. 1-6); (2) the underlying data collected and/or used to construct the Relevant Indexes and related data dictionaries (Request Nos. 7-9); and (3) documents and data reflecting BLS investigations or analyses of the reliability and accuracy of the Relevant Indexes, including any investigation and analyses of the change in prices in July 2020 observed in the Wireless CPI (Request Nos. 10-11). Attached hereto as **Exhibit C** is a true and correct copy of T-Mobile's

Amended Subpoena to DOL. Attached hereto as **Exhibit D** is a true and correct copy of the Proof of Service of T-Mobile's Amended Subpoena to DOL.

5.    On February 11, 2025, my colleague met and conferred with DOL concerning the Subpoena. My colleague memorialized the discussion from this meeting in a letter to DOL. Attached hereto as **Exhibit E** is a true and correct copy of T-Mobile's Letter to DOL dated February 18, 2025. DOL claimed that producing responsive documents would be a violation of the Confidential Information Protection and Statistical Efficiency Act ("CIPSEA"). In response, my colleague explained that the requests in the Subpoena sought information from DOL about internal procedures and methodologies for data analysis, not information collected from third-parties. My colleague also explained that while certain requests in the Subpoena sought underlying data, T-Mobile was not seeking any identifying information about survey respondents, and that DOL could exclude any data fields that contained such information. We agreed to continue discussions after DOL had an opportunity to examine what responsive information could be produced consistent with its obligations under CIPSEA. DOL also offered to prepare "explanatory responses" to the items requested in the Subpoena.

6.    On March 3, 2025, DOL sent its explanatory responses to the Subpoena. However, the explanations that DOL sent largely mirrored its FOIA response, directing T-Mobile to the BLS website as opposed to providing explanatory information. Attached hereto as **Exhibit F** is a true and correct copy of DOL's Explanatory Response Letter, dated March 3, 2025.

7.    On April 1, 2025, I met and conferred with DOL concerning the Subpoena and DOL's explanatory responses. I explained to the DOL that the explanatory responses pointed to the BLS website as their FOIA response already had; that the information on the BLS website did not provide details about its methodology that would be sufficient to respond to the Subpoena; and

that the information DOL referenced in its response as being available on the BLS website was not available anywhere on the website. I also explained that the Subpoena does not require the disclosure of any respondent information, which would render CIPSEA concerns inapplicable. During the meet-and-confer, DOL's counsel requested that I explain in writing the information, documents and data that T-Mobile believed would be responsive to the Subpoena but was missing from DOL's explanatory responses and previous FOIA response.

8.      On April 17, 2025, I sent DOL a letter explaining in detail why the information that DOL pointed to on the BLS website was insufficient and identified the specific information that was not available. In particular, I explained that there was a jump in prices in the Wireless CPI data from July 2020 which was not explained by the Wireless PPI data; instead, information about BLS's sampling methodology was required to explain said jump. Additionally, the Subpoena requested documents that could show BLS's methodology for calculating the Relevant Indexes and making quality adjustments—information that was not available on the BLS website. The letter also contained a written explanation of why the Subpoena did not present concerns under CIPSEA, as well as proposed solutions to address any concerns about confidentiality. In particular, I suggested that if there were particular fields that BLS contended were likely to reveal the identity of survey respondents, T-Mobile would be amenable to considering exclusion of those fields; alternatively, DOL could ask survey respondents for consent to disclose the information collected, much of which is publicly available and quite dated, beginning in 2017. Attached hereto as **Exhibit G** is a true and correct copy of T-Mobile's Letter to DOL, dated April 17, 2025.

9.      DOL did not substantively respond to the concerns that T-Mobile raised for two months.

10.     On June 17, 2025, I sent DOL another letter indicating that without further response

4

from DOL, T-Mobile intended to file a motion to compel. Attached hereto as **Exhibit H** is a true and correct copy of T-Mobile's Letter to DOL, dated June 17, 2025.

    11.    On June 26, 2025, DOL produced a limited set of high-level materials in response to the Subpoena. These documents consisted of the following: a "Crosswalk" document that contained DOL's narrative responses to the deficiencies that T-Mobile identified in the April 17, 2025 letter; six reference documents that illustrated information DOL said it may be amenable to producing; and copies of three documents BLS had previously produced in response to T-Mobile's FOIA request. Attached hereto as **Exhibit I** is a true and correct copy of DOL's Email to T-Mobile, dated June 26, 2025; **Exhibit J** is a true and correct copy of the Crosswalk provided by DOL; **Exhibit K** is a true and correct copy of the Sample Size spreadsheet provided by DOL; **Exhibit L** is a true and correct copy of the Confidence Interval spreadsheet provided by DOL; **Exhibit M** is a true and correct copy of the Comparability Criteria document provided by DOL; **Exhibit N** is a true and correct copy of the Sampling Response document provided by DOL; **Exhibit O** is a true and correct copy of the Substitution Response document provided by DOL; and **Exhibit P** is a true and correct copy of the Hedonic Models document provided by DOL.

    12.    On August 27, 2025, I sent another letter to DOL, identifying continued deficiencies with DOL's response. First, four of the six reference materials that DOL produced contained some responsive information, but did not cover the entire relevant period or provide all relevant information sought by the Subpoena related to the PPI. Second, DOL failed to provide responsive information to many of the requests in the Subpoena, such as: BLS's sampling methodology for the Relevant Indexes; information on data used to construct quality adjusted prices; information on how BLS deals with item discontinuance and replacements for the Relevant Indexes; and data dictionaries for the Relevant Indexes, and DOL did not provide any responsive

information to other requests in the Subpoena. And DOL refused to produce the underlying data used in the Relevant Indexes on the grounds that doing so could violate CIPSEA, ignoring T-Mobile's prior solutions proposed to address CIPSEA concerns. In this letter, I also offered compromises to resolve BLS's objections to the Subpoena where possible, such as supplementing for a smaller time period than initially requested; otherwise limiting the time period; and narrowing requests to focus on specific periods at issue. The letter again proposed methods through which DOL's concerns about CIPSEA could be addressed, such as redacting identifying information. I requested that DOL confirm by September 12, 2025, whether it would produce the requested materials. Attached hereto as **Exhibit Q** is a true and correct copy of T-Mobile's Letter to DOL, dated August 27, 2025.

13.    On September 17, 2025, DOL responded to the letter, saying that it was still in the process of reviewing the August 27, 2025 letter. In DOL's response, it asked whether an affidavit responding to specific questions posed by Plaintiffs and T-Mobile would suffice in lieu of producing responsive documents and data. Attached hereto as **Exhibit R** is a true and correct copy of DOL's Email to T-Mobile, dated September 17, 2025.

14.    On November 20, 2025, I met and conferred with DOL. DOL again raised the question of the affidavit as sufficient to respond to the Subpoena. DOL suggested that T-Mobile could provide specific questions that BLS may or may not respond to. Because written answers in an affidavit alone would not provide T-Mobile the means to verify the reliability of the data and methodologies employed by BLS, and because DOL's previous attempts to provide narrative explanations proved to be inadequate, I requested that DOL produce the actual documents and data requested in my August 27, 2025 letter. DOL reiterated that disclosure of the documents and data was barred by CIPSEA.

6

15.    Attached hereto as **Exhibit S** is a true and correct copy of the Complaint filed in the Underlying Action, Dkt.1.

16.    Attached hereto as **Exhibit T** is a true and correct copy of T-Mobile's Motion to Dismiss filed in the Underlying Action, Dkt. 79.

17.    Attached hereto as **Exhibit U** is a true and correct copy of the Order on T-Mobile's Motion to Dismiss filed in the Underlying Action, Dkt. 114.

18.    Attached hereto as **Exhibit V** is a true and correct copy of the DOJ's Press Release on the T-Mobile and Sprint Merger, dated July 26, 2019.

19.    Attached hereto as **Exhibit W** is a true and correct copy of the FCC Order on the T-Mobile and Sprint Merger, dated November 5, 2019.

20.    Attached hereto as **Exhibit X** is the settlement agreement from *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179 (S.D.N.Y. 2020), dated March 9, 2020.

21.    Attached hereto as **Exhibit Y** is a true and correct copy of T-Mobile's March 2020 press release.

22.    Attached hereto as **Exhibit Z** is a true and correct copy of the July 2024 Opensignal Survey.

23.    Attached hereto as **Exhibit AA** is a true and correct copy of the 2024 CTIA Survey.

24.    Attached hereto as **Exhibit BB** is a true and correct copy of the Alternative Data Sources and Hedonic Price Indexes report for the U.S. Consumer Price Index.

25.    Below is a true and correct copy of the current PPI Index, published by BLS, available at https://data.bls.gov/timeseries/PCU517312517312.



I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on December 4, 2025, in Los Angeles, California.

/s/ Minae Yu

Minae Yu